UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>Kevin Roger Doerr,<br><br>  Defendant. | No. 20-cr-119 (SRN/LIB)<br><br><br>**REPORT AND RECOMMENDATION** |

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636 and Local Rule 72.1, upon Defendant Kevin Roger Doerr's Motion to Suppress Statements, [Docket No. 20]. The Court held a Motions Hearing on July 20, 2020, regarding the Parties' pretrial motions at which the Parties requested the opportunity to submit supplemental briefing on the present Motion. The supplemental briefing was completed on October 9, 2020, after which Defendant's Motion to Suppress Statements, [Docket No. 20], was taken under advisement.[1]

For the reasons discussed below, the Court recommends that Defendant's Motion to Suppress Statements, [Docket No. 20], be **GRANTED**.

**I.   BACKGROUND AND STATEMENT OF FACTS**

  **A.  Background**

Defendant Kevin Roger Doerr is charged with two (2) counts of assault with a dangerous weapon in violation of 18 U.S.C. §§ 113(a)(3), 1151, and 1153(a), and two (2) counts of assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 113(a)(6), 1151, and 1153(a). (Indictment [Docket No. 1]).

---

[1] The Court addressed the Parties' pretrial discovery motions by separate Order. [Docket No. 33].

**B.  Facts**

At approximately 10:00 a.m. on April 7, 2020, Defendant went to a liquor store with his brother and they began drinking. (Tr. [Docket No. 34], at 32–33, 35). Defendant testified that he does not remember the rest of the day. (Id. at 33).

At approximately 8:50 p.m. on April 7, 2020, Officer Craig David Ware responded to a report of a vehicle that had struck a person. (Tr. [Docket No. 34], at 11–12, 20). Officer Ware was the first officer on the scene, and he observed a large group of people scattered throughout, a vehicle in a yard that had struck a tree, a person laying on the ground next to the vehicle who was being tended to by others, and Defendant laying in the street near the curb. (Id. at 13; see also, Govt.'s Ex. 1, at 7:45; 20:55). Bystanders identified Defendant as the driver of the vehicle, and bystanders also informed Officer Ware that Defendant had been attacked. (Govt.'s Ex. 1, at 7:45).

After Defendant was identified as the driver of the vehicle, Officer Ware placed him in handcuffs with the assistance of another officer. (Tr. [Docket No. 34], at 14; see also, Govt.'s Ex. 1, at 8:10). Defendant did not get up while being placed in handcuffs, but he remained laying on the ground. (See, Govt.'s Ex. 1, at 8:10–9:05).

Officer Ware testified that he noticed Defendant had injuries to his face and body, smelled of alcoholic beverages, was lethargic, had slurred speech, and had bloodshot, watery eyes. (Tr. [Docket No. 34], at 14, 21). Officer Ware further testified that Defendant "seemed out of it." (Id.).

Defendant, as well as, bystanders informed Officer Ware that he was injured, and that he was having a diabetic reaction. (Id. at 14, 21–22; see also, Govt.'s Ex. 1, at 11:05–12:05). Officer Ware then stated that he was willing to help Defendant, but he needed Defendant to stand up. (Govt.'s Ex. 1, at 12:20). Defendant informed Officer Ware that he could not stand up. (Id.).

Shortly thereafter, Officer Ware stated to Defendant, "you're in handcuffs, I'm going to advise you of your Miranda rights, ok?" (Id. at 13:00). Defendant exclaimed, "I know!" (Id.). Defendant then muttered in heavily slurred speech, that he "got a Miranda rights," while without any pause, Officer Ware concurrently began reading Defendant his Miranda rights. Once Officer Ware completed reading Defendant his Miranda rights, he asked Defendant if he understood them. Defendant responded, "I'm diabetic." (Id.). Officer Ware immediately began questioning Defendant. (Id. at 13:00–13:15). Defendant remained laying on the ground during the questioning. (Id. at 13:15–26:00).

Eventually, Officer Ware and another officer lifted Defendant up and brought him to a patrol vehicle. (Id. at 26:00–26:40). On the way to the patrol vehicle, Defendant was held upright by the two officers who grabbed him under each of his arms. (Id.). To get Defendant into the patrol vehicle, one officer lifted his legs while another pulled him across the seat from the opposite side of the patrol vehicle. (Id. at 26:40–27:15).

Defendant proceeded to lay face down across the backseat of the patrol vehicle until medical personnel arrived. (Id. at 27:15–1:05:00). Officer Ware closely monitored Defendant's condition while he laid in the back of the patrol vehicle (Tr. [Docket No. 34], at 17; see also, Govt.'s Ex. 1, at 27:15–1:05:00). Eventually, medical personnel and officers placed Defendant on a stretcher, and he was taken by ambulance to a hospital. (Govt.'s Ex. 1, at 1:05:00–1:40:00).

At the hospital, Officer Ware was informed that Defendant's diabetic condition appeared normal. (Tr. [Docket No. 34], at 18). Defendant was informed that he was under arrest. (Id. at 18; Govt.'s Ex. 1, at 2:12:20). And, after a warrant was obtained, Defendant's blood was tested for alcohol. (Tr. [Docket No. 34], at 18–19; see also, Def.'s Ex. 3). Defendant's blood alcohol concentration was .18 at approximately 12:09 a.m. on April 8, 2020. (Tr. [Docket No. 34], at 19;

3

see also, Def.'s Ex. 3). Officer Ware testified that, based on his training, Defendant's blood alcohol concentration would have been somewhere around .24 at 8:00–8:30 p.m. on April 7, 2020. (Tr. [Docket No. 34], at 26).

## II.  DEFENDANT'S MOTION TO SUPPRESS STATEMENTS. [DOCKET NO. 20].

Defendant Kevin Roger Doerr moves this Court for an Order suppressing all statements made by him following his arrest on April 7, 2020. (Def.'s Mot. to Suppress Statements [Docket No. 20]).

In his Memorandum in Support of his Motion to Suppress, Defendant contends that due to his extreme level of intoxication, he did not give a valid waiver of his rights prior to the questioning. (Def.'s Mem. [Docket No. 37], at 3–5). Specifically, Defendant contends that he did "not waive his Miranda rights explicitly or implicitly." (Id. at 3). Defendant further contends that even if the Court finds that he did waive his rights, the waiver was not valid because he did not give it knowingly and intelligently. (Id. at 4–5). Therefore, Defendant argues that his statements should be suppressed. (Id. at 5).

The Government argues that Officer Ware provided Defendant with a Miranda warning before questioning him, and Defendant gave a valid waiver of his Miranda rights. (Gov't Response, [Docket No. 38], at 5–6).

### A.  Standard of Review

"[Miranda] prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his [F]ifth [A]mendment privilege against self-incrimination and right to an attorney." United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)). Accordingly, Miranda warnings are required for official interrogations where a person

4

has been "taken into custody or otherwise deprived of his freedom of action in any significant way[.]" Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda, 384 U.S. at 444). "Interrogation under Miranda includes not only express questioning but also its functional equivalent, such as 'any word or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." United States v. Hull, 419 F.3d 762, 767 (8th Cir. 2005) (quoting Rhode Island v. Innis, 466 U.S. 291, 300–01 (1980)).

A defendant may waive their rights, "provided the waiver is made voluntarily, knowingly and intelligently." Miranda, 384 U.S. at 444. "The government has the burden of proving the validity of the Miranda waiver by a preponderance of the evidence." United States v. Haggard, 368 F.3d 1020, 1024 (8th Cir. 2004).

**B. Analysis**

It is undisputed that Officer Ware's express questioning of Defendant on April 7, 2020, constituted interrogation. It is also undisputed that Defendant was in custody during the questioning on April 7, 2020, when he made the statements he now seeks to suppress. It is further undisputed, and the record clearly demonstrates, that Defendant was read his Miranda rights by Officer Ware.

Accordingly, the only issues remaining before the Court are whether Defendant waived his rights and, if so, whether that waiver was made intelligently, knowingly, and voluntarily.

Before a statement procured through custodial interrogation can be admitted in court, the Government must demonstrate that a defendant intelligently, knowingly, and voluntarily waived his rights. Miranda, 384 U.S. at 444, 475. Here, there is nothing in the present record that indicates that Defendant expressly waived his Miranda rights. To the contrary, Officer Ware testified that

Defendant never expressly stated that he waived his rights, never expressly agreed to speak with Officer Ware, and never signed any waiver of his rights. (Tr. [Docket No. 34], at 24). Moreover, when Officer Ware asked Defendant whether he understood his Miranda rights, Defendant non-responsively replied, "I'm diabetic." (Govt.'s Ex. 1, at 13:00–13:15).

Nevertheless, valid waiver may exist even absent express statements of waiver. Berghuis v. Thompkins, 560 U.S. 370, 384 (2010). "An 'implicit waiver' of the 'right to remain silent' is sufficient to admit a suspect's statement into evidence." Id. (citing North Carolina v. Bulter, 441 U.S. 369, 376 (1979)). "[W]aiver may be inferred from the fact that the defendant responded to questions posed by the interviewer after being advised of his rights." U.S. v. House, 939 F.3d 659, 662 (8th Cir. 1991). However, "[i]f the State establishes that a Miranda warning was given and the accused made an uncoerced statement, this showing, standing alone, is insufficient to demonstrate 'a valid waiver' of Miranda rights." Thompkins, 560 U.S. at 384 (citing Miranda, 384 U.S. at 475). "'The prosecution must make the additional showing that the accused understood these rights[,]' meaning that his waiver was also knowing and intelligent." Cook v. Kernan, 948 F.3d 952, 967 (9th Cir. 2020) (alteration in original) (citation omitted) (quoting Thompkins, 560 U.S. at 384).

Accordingly, the validity of a Miranda waiver requires consideration of two distinct inquiries, namely whether the waiver was voluntary "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception[,]" and whether the waiver was knowingly and intelligently made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." United States v. Vinton, 631 F.3d 476, 483 (8th Cir. 2011) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). "The government has the burden of proving the validity of the Miranda waiver by a preponderance of the evidence." United States v. Haggard, 368 F.3d 1020, 1024 (8th Cir. 2004).

6

Here, Defendant responded to some of Officer Ware's questions after being read his Miranda rights. (See, e.g., Govt.'s Ex. 1, at 13:15–15:00). The Government contends that Defendant's statements constituted an implicit waiver. (See, Gov't Response [Docket No. 38]). Therefore, this Court must determine whether Defendant's purported implicit waiver was made intelligently, knowingly, and voluntarily.

Courts assess whether a waiver of rights pursuant to Miranda was made voluntarily by considering "the conduct of law enforcement officials and the suspect's capacity to resist any pressure." United States v Contreras, 372 F.3d 974, 978 (8th Cir. 2004). The United States Supreme Court has previously explained "that coercive police activity is a necessary predicate to . . . finding that a confession is not 'voluntary,'" Colorado v. Connelly, 479 U.S. 157, 167 (1986), and the Eighth Circuit has read that holding to mean "that police coercion is a necessary prerequisite to a determination that a waiver was involuntary and not as bearing on the separate question whether the waiver was knowing and intelligent." United States v. Turner, 157 F.3d 552, 555 (8th Cir. 1998) (quoting United States v. Bradshaw, 935 F.2d 295, 299 (D.C. Cir. 1991)).

In determining whether a waiver was made voluntarily, a court "looks at the totality of the circumstances and must determine whether the individual's will was overborne." United States v. Syslo, 303 F.3d 860, 866 (8th Cir. 2002). In considering the totality of the circumstances, a court reviews whether the statement was "extracted by threats, violence, or direct or implied promises, such that the defendant's will was overborne and his capacity for self-determination critically impaired." United States v. Sanchez, 614 F.3d 876, 883 (8th Cir. 2010) (internal quotation marks and citations omitted). "More specifically, [a court] consider[s], among other things, the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's

7

maturity, education, physical condition, and mental condition." Id. (citing Sheets v. Butera, 389 F.3d 772, 779 (8th Cir. 2004)).

Defendant offers no specific argument in his motion papers that Officer Ware nor anyone else engaged in any specific coercive or threatening tactics that caused his will to be overborne. In fact, the Court's independent review of the record indicates that Officer Ware did not engage in any threatening or coercive tactics. See, United States v. Mims, 567 F. Supp. 2d 1059, 1080 (D. Minn. 2008) (holding Miranda waiver voluntary where, among other factors, interview was conducted in a reasonable, conversational tone); see also, United States v. Makes Room, 49 F.3d 410, 415 (8th Cir. 1995) (concluding no coercive tactics were used where, among other things, officers made no threats or promises to the defendant). There is no indication in the record that Officer Ware used anything other than a conversational tone, as well as, no indication in the record that Officer Ware made any threats or promises to Defendant. Further, the questioning was not coercive in its duration. See, Makes Room, 49 F.3d at 415 (noting that interrogation lasting more than two hours was not coercive in duration).

Based on the foregoing, and under the totality of the circumstances, the Court concludes that Defendant's purported implicit waiver on April 7, 2020, was voluntary.

Next, the Court must consider whether Defendant's purported implicit waiver was knowingly and intelligently made. Vinton, 631 F.3d at 483. Defendant argues that his purported implicit waiver was not knowingly and intelligently made because of the extreme level of his intoxication which prevented him from being able to knowingly and intelligently waive his Miranda rights. (Def.'s Mem. [Docket No. 37], at 3–5).

The Government acknowledges that while intoxication is a factor to consider, it does not automatically render a Miranda waiver invalid. (Gov't Response [Docket No. 38], at 4). The

Government generally contends that Defendant's answers to Officer Ware's questions indicate that "he had the faculties to understand what was going on at the time" and "were appropriate and coherent." (Id. at 5). The Government further contends that the record "reflects that the defendant was not so intoxicated he did not have the necessary comprehension of his rights and consequences of waiving those rights because he interrupt[ed] Officer Ware and sa[id] 'I know!' when being read his rights." (Id. at 5).

A defendant's intoxication, in certain circumstances, can invalidate a waiver of rights pursuant to Miranda; however, the Eighth Circuit has "declined to adopt a per se rule of involuntariness when confronted with intoxication." Makes Room, 49 F.3d at 415. Rather, the Eight Circuit requires an evaluation of whether, in spite of intoxication, "the evidence shows that [the defendant] understood his rights and knowingly waived them." Turner, 157 F.3d at 556. In determining whether a waiver was made knowingly and intelligently, a court looks to the totality of the circumstances. U.S. v. Harper, 466 F.3d 634, 643 (8th Cir. 2006).

Here, Defendant was laying in the street when Officer Ware arrived at the scene. (Tr. [Docket No. 34], at 13; see also, Govt.'s Ex. 1, at 7:45). Defendant did not stand or sit when Officer Ware approached him. (Govt.'s Ex. 1, at 8:00). Nor did Defendant stand or sit when Officer Ware went to place him in handcuffs. (Id. at 8:10). Rather, Defendant remained laying in the street, and did not comprehensibly respond to Officer Ware's commands for Defendant to roll over. (Id.). Officer Ware required the assistance of another officer to roll Defendant over so that handcuffs could be placed on Defendant. (Id. at 8:10–9:00).

Defendant was obviously intoxicated. He smelled of alcoholic beverages, was lethargic, had slurred speech, and had bloodshot, watery eyes. (Tr. [Docket No. 34], at 14, 21; see also, Govt.'s Ex. 1). Moreover, Defendant had blood on his face and was obviously injured, and

9

bystanders informed Officer Ware that Defendant had been in a car accident and had been assaulted. (See, e.g., Govt.'s Ex. 1, at 8:00–8:15).

After being told that Defendant was having a diabetic reaction, Officer Ware stated that he was willing to help Defendant, but he needed Defendant to stand up. (Govt.'s Ex. 1, at 12:20). Defendant informed Officer Ware that he could not stand up. (Id.). Officer Ware then asked Defendant if his medicine was in the car, and Defendant non-responsively replied that his insulin was low and he did not know what he was doing. (Id. at 12:50).

On the present record, these are the circumstances prior to Officer Ware reading Defendant his Miranda rights. This Court finds that these circumstances do not provide evidence from which it can reasonably inferred that Defendant would be capable of understanding his rights and knowingly waiving them.

Nonetheless, the Government contends that the record "reflects that the defendant was not so intoxicated he did not have the necessary comprehension of his rights and consequences of waiving those rights because he interrupt[ed] Officer Ware and sa[id] 'I know!' when being read his rights." (Govt.'s Response [Docket No. 38], at 5). However, the Government misstates the record.

Defendant did not interrupt Officer Ware while he was reading Defendant's Miranda rights. Rather, Defendant exclaimed "I know!" before Officer Ware had begun reading his Miranda rights. (Govt.'s Ex. 1, at 13:05). Prior to reading Defendant his Miranda rights, Officer Ware stated to Defendant, "you're in handcuffs, I'm going to advise you of your Miranda rights, ok?" (Id. at 13:00). Immediately thereafter, Defendant exclaimed, "I know!" (Id. At 13:05). To the extent that Defendant's exclamation was even responsive to Officer Ware's question, it would indicate that Defendant knew he was in handcuffs, knew Officer Ware was going to advise him of his Miranda

10

rights, or both. However, under any reasonable interpretation, Defendant did not indicate that he knew or understood his Miranda rights. Likewise, it cannot reasonably be inferred from Defendant's exclamation that he possessed "the necessary comprehension of his rights and consequences of waiving those rights."

Officer Ware did not pause to inquire into what Defendant purported to know or even to wait for Defendant stop speaking. Instead, Officer Ware quickly began reading Defendant his Miranda rights, speaking over Defendant who continued by muttering in heavily slurred speech that he "got a Miranda rights." (Id.).

After Officer Ware completed reading Defendant his Miranda rights, he asked Defendant if he understood them. (Id. at 13:15). Defendant non-responsively replied, "I'm diabetic." (Id.). Officer Ware never inquired further into whether Defendant understood his Miranda rights. (See, Id.; Tr. [Docket No. 34], at 24). Rather, Officer Ware immediately began questioning Defendant, again speaking over Defendant as he muttered something incomprehensible. (Govt.'s Ex. 1, at 13:15).

The Government generally contends that Defendant's answers to Officer Ware's questions indicate that "he had the faculties to understand what was going on at the time" and "were appropriate and coherent." (Govt.'s Response [Docket No. 38], at 5). Defendant answered some of Officer Ware's questions. However, the questions answered were simple, and Defendant provided only simple answers without elaboration. (Govt.'s Ex. 1, at 13:15–19:00). Although Defendant provided some appropriate answers to Officer Ware's questions, not all of his answers were responsive. (See, Govt.'s Ex. 1). Most notably, Defendant provided a non-responsive answer when asked whether he understood his Miranda rights. (See, Id. at 13:15).

11

Considering the totality of the circumstances, this Court does not find the mere fact Defendant was able to answer some simple questions with simple answers indicative of his ability to understand his Miranda rights and to knowingly and intelligently waive those rights.

As already noted, the circumstances prior to Officer Ware reading Defendant his Miranda rights did not indicate that Defendant was capable of understanding his rights and knowingly and intelligently waiving them. After Officer Ware read Defendant his Miranda rights, Defendant remained laying on the ground, with minimal movements, while he was being questioned. (See, Govt.'s Ex. 1, at 13:00–26:00). After he belligerently yelled at bystanders, Defendant was brought to a patrol vehicle. (Id. at 26:00–26:40). Defendant was unable to stand or walk on his own, but he was lifted and held upright by Officer Ware and another officer. (See, Id.). Similarly, Defendant was unable to get into the patrol vehicle on his own, but he was lifted into the vehicle with Officer Ware lifting his legs while another officer pulled Defendant across the backseat from the opposite side of the patrol vehicle. (See, Id. at 26:40–27:15). Inside the patrol vehicle, Defendant laid face down across the backseat until medical personnel arrived. (See, Id. at 27:15–1:05:00). When medical personnel arrived, Defendant was unable to get out of the patrol vehicle or even sit up without significant assistance. (See, Id. at 1:05:00).

On the present record, there is further evidence that Defendant was extremely impaired due to his intoxication and injuries to the extent that he was unaware what was occurring around him.[2] For example, after Officer Ware had already been standing over Defendant for several minutes, handcuffed Defendant, read Defendant his Miranda rights, and asked Defendant several questions,

---

[2] The Court notes that Defendant, as well as, bystanders repeatedly stated to Officer Ware that Defendant was having a diabetic reaction. (See, Govt.'s Ex. 1). Officer Ware testified that he was informed at the hospital that Defendant's diabetic condition appeared normal, but Officer Ware further testified that he did not know whether Defendant was given any juice or sugar containing food. (Tr. [Docket No. 34], at 18, 22). However, it is not necessary to determine Defendant's diabetic condition as it does not impact this Court's analysis. On the present record, Defendant's level of intoxication combined with his injuries are sufficient to establish that he was extremely impaired regardless of whether Defendant was also having a diabetic reaction on April 7, 2020, which may have contributed to that impairment.

Defendant oddly asked why Officer Ware was standing over him. (Id. at 23:15). Similarly, while laying face down in the patrol vehicle, Defendant asked why his face was all beat up. (Id. at 42:25). In addition, Plaintiff testified that on April 7, 2020, he took prescribed medications around 7:00 a.m., began drinking around 10:00 a.m., and does not remember the rest of the day. (Tr. [Docket No. 34], at 32–36). Plaintiff did not consume any alcohol after he was read his Miranda rights, yet the results of a blood test conducted hours later revealed his blood alcohol concentration was .18. (Id. at 19, 21; see also, Def.'s Ex. 3).

The Government cites to several cases in support of its contention that the present record establishes that Defendant's purported implicit waiver was knowingly and intelligently made. (See, Govt.'s Response [Docket No. 38], at 4–5). In each of these cases, the Eighth Circuit Court of Appeals rejected the argument that a defendant's waiver of his rights was invalid due to his intoxication. However, each of these cases is materially distinguishable from the factual record in the present case.

Particularly, in each of these cases, the defendant appeared to considerably less intoxicated and demonstrated a greater level of competency than Defendant in the present case. Moreover, in some of these cases, the defendant even expressly acknowledged that he understood his Miranda rights.

For instance, United States v. Gaddy, the defendant "had not slept the night before" and had "consumed alcohol and drugs several hours before he waived his rights." 532 F.3d 783, 788 (8th Cir. 2008). In rejecting the defendant's argument that his confession to law enforcement was involuntary, the Court relied on testimony that the defendant "appeared awake and coherent" and that he had "acknowledged that he understood [his Miranda rights], and that he wanted to make a statement." Id. Here, Officer Ware testified that Defendant "seemed out of it." (Tr. [Docket No.

34], at 14, 21). And Defendant never acknowledged that he understood his Miranda rights, nor that he wanted to make a statement. (See, Tr. [Docket No. 34], at 24; Govt.'s Ex. 1, at 13:15).

In United States v. Howard, the defendant "indicated to officers he was high." 532 F.3d 755, 763 (8th Cir. 2008). The Court rejected the defendant's argument that certain statements were involuntary because "he did not appear intoxicated" and "was coherent and spoke in a manner which indicated he understood what was happening." Id. at 758, 763. Here, Defendant was obviously intoxicated, slurred his speech, and, as noted above, immediately before being read his Miranda rights, Defendant directly stated to Officer Ware that he did not know what he was doing. (See, e.g., Govt.'s Ex. 1, at 12:50).

In United States v. Annis, the defendant was injured and suffering from methamphetamine withdrawal. 446 F.3d 852, 856 (8th Cir. 2006). The Court rejected the defendant's argument that his statements were involuntary and noted that the defendant "did not appear to be in pain or suffering from the withdrawal," did not complaint to law enforcement, and "answered the questions reasonably, even reading and reviewing his statements twice and signing the report." Id. Here, Defendant repeatedly informed Officer Ware that he was injured, and nothing in the present record indicates that Defendant was capable of reviewing and signing a document. (See, Govt.'s Ex. 1).

In United States v. Turner, the defendant was under the influence of PCP. 157 F.3d 552, 556 (8th Cir. 1998). However, the Court rejected the defendant's argument that his waiver was not knowing and intelligent because he "was cooperative, reviewed and initialed each admonition of the waiver form, agreed to answer questions, and gave accurate information, including the name and telephone number of the owner of the car." Id. at 555–56. Here, Defendant was non-responsive to many of Officer Ware's instructions, Defendant did not did not expressly agree to answer

14

questions, and there is no evidence in the present record that Defendant did, or was even able to, review or initial any waiver form. (See, Govt.'s Ex. 1). Nor is there any evidence in the present record that indicates Defendant was capable of providing accurate, detailed information such as a telephone number. (See, Id.).

Considering the totality of the circumstances and based on the present record, the Court concludes that the Government has failed to show by a preponderance of the evidence that Defendant's purported implicit waiver of his rights pursuant to Miranda was knowing and intelligent. See, United States v. Auginash, No. 17-cr-51 (ADM/LIB), 2017 WL 3190650, at *10–14 (D. Minn. June 14, 2017), report and recommendation adopted by 2017 WL 3190565 (D. Minn. July 26, 2017) (finding the defendant's waiver was not given knowingly and intelligently due to his level of intoxication).

Therefore, for the reasons stated above, the Court concludes that the Government has failed to meet its burden of showing by a preponderance of the evidence that Defendant gave a valid waiver of his rights on April 7, 2020.

Based on the foregoing, the Court recommends Defendant's Motion to Suppress Statements, [Docket No. 20], be **GRANTED**.

### III.   CONCLUSION

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**: Defendant's Motion to Suppress Statements, [Docket No. 20], be **GRANTED**.

Dated: October 29, 2020                              s/Leo I. Brisbois
                                                                Leo I. Brisbois
                                                                U.S. MAGISTRATE JUDGE

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.